Cowin, J.
This case concerns the dissolution of a partnership as well as the break-up of a marriage. Count I essentially seeks an accounting and a declaration that Cynthia Waitze is liable to Richard Gorden for her share of the partnership obligations and liabilities. Count II requests a determination that Cynthia Waitze’s transfer of her interest in real property to her *649 husband Paul Waitze was a fraudulent transfer. A juiy-waived trial was held on October 8, 1997 at which the three parties testified.[1]
FINDINGS OF FACT
Based on the evidence presented at trial, the reasonable inferences to be drawn therefrom and evaluation of the credibility of the witnesses, I find as follows.
1. The plaintiff Richard B. Gorden (Gorden) and the defendant Cynthia A. Waitze (Ms. Waitze) were realtors and partners in a real estate business known as G&W Associates for several years. Originally, they had a franchise agreement with Century 21. That franchise agreement was terminated at some point and Gorden and Ms. Waitze thereafter operated a REMAX franchise.
2. In their REMAX franchise, Gorden and Ms. Waitze continued their earlier partnership. There was a single partnership throughout. There was no written partnership agreement.
3. Gorden and Ms. Waitze each handled their own individual listings and sales. All commissions earned on sales were deposited into a G&W Associates checking account (the checking account). The partner responsible for the sale would withdraw one-half the commission from the checking account as his or her commission; the other half of the commission remained in the checking account to pay expenses. The business generated no other income.
4. At all relevant times, Ms. Waitze handled the accounts and records for the partnership. Both partners were authorized to write checks and make deposits. Some of the books and records were at the partnership’s REMAK office but most were kept at Ms. Waitze’s home.
5. In December 1994, Ms. Waitze informed Gorden that she was going to Florida to help her mother who was ill. Ms. Waitze left a listing of properties on which she was working to assist Gorden.
6. Ms. Waitze eventually informed Gorden that she had decided to divorce her husband, the codefendant Paul Waitze (Mr. Waitze) and remain in Florida. Accordingly, it was necessary for the partnership to be dissolved.
7. In March 1995 the three parties met, although Mr. Waitze left the meeting after a short time. Gorden and Ms. Waitze discussed the outstanding debts of G&W Associates. Ms. Waitze acknowledged that she owed the partnership money, but said she had no money and would pay when she was able to do so. She asked for an accounting of her total outstanding obligations which Gorden agreed to provide.
8. On May 18, 1995 a divorce and separation agreement (the agreement) between Ms. Waitze and Mr. Waitze was approved by the Norfolk County Probate Court.
9. Pursuant to the agreement, Ms. Waitze conveyed to Mr. Waitze her interest in the former marital home in Sharon on April 12, 1995. This deed was not recorded by Mr. Waitze until November 20, 1995.
10. Also pursuant to the agreement, Mr. Waitze conveyed to Ms. Waitze on April 12, 1995, his interest in a Cape Cod time-share condominium which the two had formerly owned together. This deed was recorded in the Barnstable County Registry of Deeds on April 18, 1995.
11.In May 1995, Gorden mailed to Ms. Waitze in Florida a letter of account indicating that she owed the partnership a total of $15,757.81 (plus interest). This amount consists of Ms. Waitze’s one-half of the outstanding partnership debt as of December 1994, calculated as follows
Nationwide Cellular $1058.54
Hochman/Nugent 4098.92
Sharon Advocate 371.73
Jewish Advocate 317.60
Godes 1245.00
First USA 4634.41 (16.24% interest)
MBNA 4854.62 (15.9% interest)
Chase 7297.13 (14.9% interest)[2]
23,877.95 x 50%= $11,938.98
[[Image here]]
12. Ms. Waitze contests several of the above amounts that Gorden claims she owes the partnership.
13. In regard to the Nationwide Cellular bill of $1058.54, based upon the evidence before the Court and in view of the fact that there is no specific evidence of improper use of the cellphones at issue, there is insufficient evidence to conclude that this debt is other than a debt of the partnership.[3]
14. In regard to the bill for $4098.92 of Hochman/Nugent, the attorneys for the partnership, the bill appears to relate primarily to prior work for the Waitze-Gorden partnership and as such is a current debt of the partnership.
15. The bills of the Sharon Advocate for $371.73 and of the Jewish Advocate for $317.60 are for advertising for the partnership and thus are debts of the partnership.
16. The bill of Godes, Schaffer & Company, P.C. of $1245.00 is the bill of the accountants for the partnership and is a partnership debt.
17. Three credit cards were used by the partnership: First USA, MBNA and Chase. These accounts were in Gorden’s name because he was able to obtain credit and neither the business nor Ms. Waitze could do so. Some of the accounts contain balances that consist of prior outstanding amounts dating back a few years.[4] As the partnership continued, the debts continued as debts of the partnership. Further, until *650 she left the office, Ms. Waitze wrote monthly checks or was aware that such were written to pay down the outstanding balances. These checks reduced the cash available to the partnership and Ms. Waitze voiced no objection to this procedure. Accordingly, these outstanding balances are debts of the partnership.
18. Detailed credit card charges for the MBNA bill and the Chase bill for some of 1994 and 1995 were submitted. (See exhibit 12.) Some of these credit card charges were for personal expenses. Ms. Waitze reimbursed the checking account for any such items that she charged to the credit card accounts. Gorden did not do so. I do not believe that each partner could charge any personal items he or she wished to the business account without some type of adjustment. I, therefore, am deducting from the credit card debt of the partnership all amounts before me which represent personal (nonbusiness) charges. The amount of the Gorden personal charges on the MBNA bills is $819.62 bill and on the Chase bill said sum is $2,673.18. These two amounts are to be deducted from the respective bills. Thus, $357.16 remains as a partnership debt on the MBNA bill and $3,850.41 on the Chase bill.
19. The total figure of $4,634.41 is the amount claimed in Exhibit 1 (the accounting) on the First USA bill. There is no evidence contradicting that amount; thus $4,634.41 is the partnership debt on the First USA account.
20. On the Crandall/Easton commission, plaintiff failed to credit Ms. Waitze for the $1118.75 that should have been placed in the joint expense account.
21. Ms. Waitze owes the partnership $12,892.60.
22. Mr. Waitze had no involvement in or connection to the partnership between Gorden and Ms. Waitze.
DISCUSSION
The evidence before me indicates that there was a single partnership for the last several years between Gorden and Ms. Waitze. They simply changed franchises, from Century 21 to REMAX. Thus, there was a single partnership throughout. The partnership had debts and the debts existed throughout irrespective of the fact that the partnership terminated its franchise with one franchisor and entered a new franchise relation. Thus, the bills incurred during the Century 21 franchisee period (attorneys’ bills and prior credit card balances) remain a partnership debt throughout the relevant period.
As to the items on the credit card statements that were introduced in evidence, it is illogical to suggest that each partner could charge any personal expenses he or she wished to the business account and expect that the business checking account would pay for such expenses. I credit Ms. Waitze’s testimony that she reimbursed the checking account for all her personal expenses. Accordingly, I have deducted all personal charges from the credit card amounts that Ms. Waitze owes the partnership.
Plaintiff further requests that I declare fraudulent the transfer of property ordered by the Probate Court. The judgment of the Probate Court entered on a matter' within its jurisdiction is controlling. It is not subject to collateral attack by a nonparty in this proceeding.
RULINGS OF LAW PLAINTIFF’S REQUESTS
1. Correct statement of law but irrelevant as this is not a suit by a third party.
2. Allowed.
3. Correct statement of the law. However, the Probate Court has determined the issue.
4. See No. 3.
5. Denied. The Probate Court has ruled on the matter.
6. Denied as request for finding of fact.
7. Denied. The alleged fraudulent conveyance occurred in connection with the divorce case, thereby rendering the normal factors irrelevant.
8. Allowed.
9. Denied.
10. Denied. See Findings of Fact.
11. Denied.
12. Denied.
DEFENDANTS’ REQUESTS
1. Denied as request for finding of fact.
2. See No. 1.
3. Allowed.
4. Allowed.
5. Allowed.
ORDER FOR JUDGMENT
It is hereby ORDERED that the following judgment shall enter:
1. Judgment for the plaintiff on Count I against defendant Cynthia Waitze in the amount of $12,892.60 together with interest and costs.
2. Judgment for the defendants on Count II.

 The day after trial concluded, plaintiff submitted additional bills to the Court. Defendant objects to said submission. Treating this submission as a motion to reopen the evidence, and no grounds having been presented as to why said evidence was not offered at trial, the motion is DENIED.

 It is assumed that interest is included in the total sums. If it is not, the plaintiff, having presented no evidence of the amount of interest over and above the amounts stated, I am unable to make a finding awarding it.

 There was a vague reference to the fact that plaintiff s wife sometimes used one of the three cellphones issued to the partnership.

 No evidence was presented regarding the nature of the charges incurred that caused the outstanding balances.